**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS,**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RAKMARK, INC.,<br>an Illinois Corporation,<br><br>Plaintiff,<br><br>v.<br><br>HOOKERS TOWING LLC<br>d/b/a Hooker's Towing<br>a Missouri limited liability company<br><br>ANDREW LANGER,<br>individually and as sole member of<br>HOOKERS TOWING LLC, and<br><br>JOHN DOES 1-10<br><br>Defendants. | ) | CASE NO.<br><br>Honorable Judge:<br><br>Magistrate:<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT AT LAW**

NOW COMES Plaintiff, RAKMARK, INC. ("Rakmark" or "Plaintiff"), by and through its attorney, IGOR BOZIC, complaining of Defendants HOOKERS TOWING LLC d/b/a HOOKER'S TOWING ("Hookers"), ANDREW LANGER ("Langer"), individually and as sole member of HOOKERS TOWING LLC, and JOHN DOES 1-10, upon information and belief and pleading in the alternative, and states as follows:

**NATURE OF ACTION**

1. This is an action arising under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c)-(d) and 1964(c), together with related state-law claims for breach of contract, breach of bailment, fraudulent misrepresentation, conversion, replevin, civil conspiracy, declaratory relief, punitive damages, and other related causes of action.

2. Plaintiff is an Illinois motor carrier engaged in interstate commerce throughout the United States.

3. Defendants are engaged in the business of interstate towing, recovery, transportation, storage, detention, and release of commercial and non-commercial motor vehicles.

4. Upon information and belief, Defendants operate a towing and storage enterprise that derives substantial revenue through the acquisition, detention, storage, and release of vehicles placed into Defendants' possession and control.

5. Upon information and belief, Defendants' business practices include obtaining possession of vehicles, transporting such vehicles to facilities owned, operated, or controlled by Defendants, imposing excessive towing, storage, administrative, release, impound, and related charges, and conditioning release of such vehicles upon payment of such charges.

6. Defendants' conduct substantially affects interstate commerce because commercial tractors, trailers, cargo, and transportation equipment are instrumentalities of interstate commerce.

7. Upon information and belief, Defendants used interstate telephone calls, text messages, electronic communications, invoices, payment demands, and other interstate wire communications in furtherance of the enterprise and scheme alleged herein.

8. This action arises from Defendants' acceptance of a routine towing assignment involving Plaintiff's commercial tractor and trailer, Defendants' subsequent diversion of Plaintiff's equipment from the agreed destination, Defendants' detention of Plaintiff's equipment, Defendants' refusal to provide proper billing documentation, and Defendants' demand for approximately Twenty-One Thousand Dollars ($21,000.00) as a condition of releasing Plaintiff's property.

9. Upon information and belief, Defendants' conduct toward Plaintiff was not an isolated occurrence but was instead consistent with a continuing pattern and practice of similar conduct directed toward other vehicle owners and operators.

10. Plaintiff asserts federal claims under 18 U.S.C. §§ 1962(c) and 1962(d), and asserts related state-law claims for breach of contract, breach of bailment, fraudulent misrepresentation, conversion, replevin, civil conspiracy, declaratory relief, punitive damages, and all other relief permitted by law.

11. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered substantial damages and is entitled to compensatory damages, treble damages, punitive damages, attorneys' fees, costs, equitable relief, and all other available relief.

**PARTIES**

12. Plaintiff RAKMARK, INC. ("Rakmark" or "Plaintiff") is, and at all relevant times was, an Illinois corporation organized and existing under the laws of the State of Illinois, with its principal place of business located in Illinois.

13. Plaintiff is engaged in interstate trucking, freight transportation, logistics, and related commercial transportation services throughout the United States.

14. Defendant HOOKERS TOWING LLC d/b/a HOOKER'S TOWING ("Hookers") is, and at all relevant times was, a Missouri limited liability company with its principal place of business located at 511 James Rollo Drive, Grain Valley, Missouri 64029.

15. Defendant Hookers Towing LLC operates under USDOT Number 2927800 and MC Number 1319123 and is authorized and/or licensed by the Federal Motor Carrier Safety Administration to transport property in interstate commerce.

16. Upon information and belief, Defendant Hookers Towing LLC operates under USDOT Number 2927800 and MC Number 1319123 and holds itself out to the public as an interstate towing and recovery company.
17. Upon information and belief, Defendant ANDREW LANGER ("Langer") is a citizen of the State of Missouri.
18. Upon information and belief, Langer is the sole member, owner, manager, officer, controlling person, and principal decision-maker of Hookers Towing LLC.
19. Upon information and belief, Langer exercised direct control over the policies, practices, operations, billing procedures, towing activities, storage practices, release practices, payment practices, and business affairs of Hookers Towing LLC.
20. Upon information and belief, Langer personally participated in, authorized, directed, ratified, approved, knew of, acquiesced in, or knowingly benefited from the acts and omissions alleged herein.
21. Plaintiff is presently unaware of the true names and capacities of Defendants JOHN DOES 1-10, whether individual, corporate, partnership, limited liability company, association, or otherwise, who participated in, assisted, facilitated, directed, authorized, concealed, benefited from, or are otherwise legally responsible for the conduct alleged herein.
22. Plaintiff will amend this Complaint to identify such defendants when their identities become known through investigation and discovery.
23. Whenever reference is made in this Complaint to any act or omission of any Defendant, such allegation shall be deemed to mean that the officers, directors, members, managers, employees, agents, representatives, servants, alter egos, co-conspirators, or other persons acting on behalf of such Defendant committed, authorized, ratified, approved, directed, participated in, or

knowingly acquiesced in such act or omission while acting within the course and scope of their authority, agency, employment, ownership, or participation in the enterprise alleged herein.

**JURISDICTION AND VENUE**

24. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c), 1962(d), and 1964(c).

25. This Court further has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because complete diversity of citizenship exists between Plaintiff and Defendants and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

26. This Court further has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same case or controversy and common nucleus of operative facts as Plaintiff's federal claims.

27. Plaintiff Rakmark, Inc. is an Illinois corporation with its principal place of business in the State of Illinois.

28. Defendant Hookers Towing LLC d/b/a Hooker's Towing is a Missouri limited liability company with its principal place of business located at 511 James Rollo Drive, Grain Valley, Missouri 64029.

29. Upon information and belief, Defendant Andrew Langer is a citizen of the State of Missouri and is the sole member of Hookers Towing LLC.

30. The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00) because Defendants detained a commercial tractor and trailer having a combined value exceeding Seventy-Five Thousand Dollars ($75,000.00), demanded approximately Twenty-One

Thousand Dollars ($21,000.00) as a condition of release, and caused Plaintiff to incur substantial consequential, business interruption, and related damages.

31. This Court has personal jurisdiction over Defendants pursuant to Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure and 735 ILCS 5/2-209.

32. Defendants knowingly entered into a commercial transaction with Plaintiff, an Illinois corporation, and purposefully directed business activities and communications toward Illinois.

33. Defendants communicated with Plaintiff and Plaintiff's representatives concerning the towing assignment, destination, pricing, payment arrangements, invoicing, detention, and release of Plaintiff's equipment.

34. Plaintiff's management personnel located in Illinois approved Defendants' engagement, authorized the towing assignment, directed payment arrangements, requested invoices and billing documentation, communicated with Defendants regarding release of the equipment, and suffered the resulting economic injury in Illinois.

35. Personal jurisdiction exists pursuant to 735 ILCS 5/2-209(a)(1) because Defendants transacted business within Illinois by knowingly entering into and performing a commercial agreement with Plaintiff, an Illinois corporation.

36. Personal jurisdiction further exists pursuant to 735 ILCS 5/2-209(a)(7) because the parties' agreement, payment arrangements, invoicing requests, performance obligations, communications, and resulting economic consequences were substantially connected with the State of Illinois.

37. Defendant Hookers Towing LLC operates as a federally authorized interstate motor carrier under USDOT Number 2927800 and MC Number 1319123 and is authorized for the interstate transportation of property.

38. Pursuant to 49 U.S.C. § 13304 and applicable federal regulations governing interstate motor carriers, Defendant Hookers Towing LLC designated an agent for service of process in the State of Illinois.

39. By obtaining and maintaining interstate operating authority, designating an Illinois process agent, entering into a commercial relationship with an Illinois corporation, and directing business activities and communications toward Illinois, Defendants purposefully availed themselves of the privilege of conducting activities connected with Illinois.

40. Defendants' conduct substantially affected interstate commerce because the equipment detained by Defendants consisted of commercial transportation equipment utilized in interstate trucking operations.

41. The exercise of personal jurisdiction over Defendants comports with traditional notions of fair play and substantial justice.

42. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims were directed toward this District, Plaintiff suffered injury within this District, and Defendants are subject to personal jurisdiction within this District.

43. Plaintiff pleads all claims herein, including alternative and inconsistent theories of recovery, pursuant to Rule 8(d) of the Federal Rules of Civil Procedure.

**PREDATORY TOWING INDUSTRY BACKGROUND**

44. Predatory towing practices have been recognized by governmental entities, regulators, insurers, motor carriers, consumer-protection organizations, and legislatures as a recurring problem affecting both private motorists and commercial transportation companies.

45. The National Insurance Crime Bureau ("NICB"), a national organization dedicated to combating insurance fraud and related misconduct, has reported an eighty-nine percent (89%) increase in predatory towing claims nationwide between 2022 and 2024 and has publicly described predatory towing as involving "deceptive or coercive practices" used to exploit motorists in vulnerable situations. See National Insurance Crime Bureau, *Predatory Towing* (2025).

46. Governmental entities and policymakers have responded to growing concerns regarding predatory towing by enacting and proposing legislation intended to regulate towing charges, storage fees, vehicle release practices, billing transparency, and consumer protections. See, e.g., 625 ILCS 5/4-203; 625 ILCS 5/18a-500 et seq.; Mo. Rev. Stat. §§ 304.153, 304.155. Public officials in Illinois have likewise identified rogue and predatory towing as a matter of public concern requiring regulatory intervention.

47. The trucking industry has similarly recognized predatory towing as a significant threat to interstate commerce. The American Trucking Associations ("ATA") maintains a dedicated Predatory Towing Resource Hub and has publicly warned that predatory towing companies exploit truck breakdowns and accidents to obtain excessive payments from motor carriers.

48. ATA has further supported federal legislative and regulatory efforts to combat predatory towing practices, including situations in which towing companies allegedly overcharge truck owners, unlawfully seize assets, or improperly withhold trucks, trailers, cargo, or other transportation equipment pending payment of disputed charges.

49. Industry studies and testimony presented to federal policymakers have identified excessive towing charges, unwarranted ancillary fees, release delays, cargo-release delays, and vehicle detention practices as recurring forms of predatory towing affecting interstate motor carriers.

50. In the commercial trucking context, possession of a disabled tractor or trailer provides a towing company with substantial economic leverage because each day of detention may result in lost revenue, delayed shipments, contractual penalties, substitute-equipment expenses, customer dissatisfaction, and other consequential damages.

51. Unlike an ordinary commercial dispute, a towing company that has obtained possession and control of a commercial vehicle may effectively prevent the vehicle owner from recovering, operating, repairing, transporting, or otherwise utilizing the equipment unless and until the towing company agrees to release the vehicle.

52. Upon information and belief, Defendants were aware of the economic pressure and business interruption that would result from continued detention of Plaintiff's commercial tractor and trailer.

53. Upon information and belief, Defendants knowingly exploited such circumstances in connection with the conduct alleged herein.

54. Upon information and belief, Defendants' conduct toward Plaintiff was consistent with a broader pattern and practice of obtaining possession of vehicles, diverting vehicles to facilities owned, operated, or controlled by Defendants, asserting excessive towing, storage, release, administrative, and related charges, and conditioning release of vehicles upon payment of such charges.

55. Plaintiff further alleges that Defendants' conduct was undertaken in a manner affecting interstate commerce and was not an isolated occurrence.

**FACTUAL ALLEGATIONS**

56. Plaintiff incorporates by reference each and every preceding allegation of this Complaint as though fully set forth herein.

57. On or about May 23, 2026, Plaintiff's commercial tractor, Unit 7121, a 2022 Volvo VNL operated by Plaintiff's driver, Efrain Perez, suffered a passenger-side steer tire blowout near Kansas City, Missouri, causing the vehicle to leave the roadway and sustain damage.
58. The tractor was being utilized in Plaintiff's interstate trucking operations.
59. Following the incident, Plaintiff sought towing and recovery services for the purpose of transporting the disabled tractor to a repair facility capable of inspecting and repairing the vehicle.
60. On or about May 23, 2026, Plaintiff contacted Defendants and requested towing assistance.
61. During communications with Defendants, Plaintiff provided Defendants with the location of the disabled tractor, including location information identifying the vehicle's location near Kansas City, Missouri.
62. Plaintiff expressly instructed Defendants to transport the disabled tractor to Love's Travel Stop and Truck Repair located at 3201 North Ameristar Drive, Kansas City, Missouri 64161.
63. The designated destination was approximately nine (9) miles from the location of the disabled tractor.
64. Defendants received, acknowledged, and accepted Plaintiff's towing instructions.
65. Defendants represented that a tow truck had been dispatched and was en route to the location of Plaintiff's vehicle.
66. Prior to obtaining possession of Plaintiff's equipment, Defendants agreed to perform the requested tow for approximately Seven Hundred Dollars ($700.00).
67. In reliance upon Defendants' representations, Plaintiff entrusted possession of its commercial tractor and trailer to Defendants.

68. Defendants thereafter obtained exclusive possession, custody, and control of Plaintiff's tractor and trailer.

69. Upon information and belief, after obtaining possession of Plaintiff's equipment, Defendants represented that Love's Travel Stop and Truck Repair would not accept the vehicle in its condition.

70. Upon information and belief, such representation was false.

71. Upon information and belief, Defendants knew or should have known that Love's Travel Stop and Truck Repair routinely receives disabled, damaged, and inoperable commercial vehicles requiring inspection, repair, maintenance, towing, and recovery services.

72. Upon information and belief, Defendants made the foregoing representation for the purpose of diverting Plaintiff's equipment to a facility owned, operated, or controlled by Defendants.

73. Rather than transporting Plaintiff's equipment to the destination designated by Plaintiff, Defendants transported the tractor and trailer to Defendants' facility located at or near 511 James D. Rollo Drive, Grain Valley, Missouri 64029.

74. Defendants thereafter retained possession and control of Plaintiff's tractor and trailer.

75. Plaintiff subsequently learned that Defendants had transported the equipment to Defendants' Grain Valley facility rather than the destination expressly designated by Plaintiff.

76. During the days following the tow, Plaintiff repeatedly requested invoices, billing documentation, itemized charges, and information concerning the basis for Defendants' charges.

77. Defendants failed and refused to provide proper invoices, itemized billing statements, or adequate documentation supporting the charges being asserted.

78. Defendants demanded immediate payment, including payment by EFS and other cash-equivalent means, and conditioned release of Plaintiff's equipment upon receipt of such payment.

79. Although Defendants initially agreed to perform the requested tow for approximately Seven Hundred Dollars ($700.00), Defendants thereafter demanded approximately Twenty-One Thousand Dollars ($21,000.00) as a condition of releasing Plaintiff's tractor and trailer.

80. Defendants refused to release Plaintiff's equipment unless Plaintiff first satisfied Defendants' payment demands.

81. The amount demanded by Defendants bore no reasonable relationship to the approximately nine-mile tow originally requested by Plaintiff.

82. Upon information and belief, Defendants knowingly utilized possession and detention of Plaintiff's equipment as leverage to compel payment of charges that Plaintiff disputed.

83. Defendants knew that continued detention of Plaintiff's commercial transportation equipment would interfere with Plaintiff's interstate trucking operations and would create substantial economic pressure upon Plaintiff to submit to Defendants' demands.

84. Upon information and belief, Defendants understood that each day of detention increased Plaintiff's economic pressure to submit to Defendants' payment demands and increased the likelihood that Plaintiff would pay charges it otherwise disputed.

85. At all relevant times, the detained tractor and trailer had a combined value exceeding Seventy-Five Thousand Dollars ($75,000.00).

86. Defendants continued to retain possession of Plaintiff's tractor and trailer despite Plaintiff's objections to the charges being asserted.

87. Plaintiff was deprived of the possession, use, operation, and economic benefit of its commercial transportation equipment.

88. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages including, but not limited to, loss-of-use damages, business interruption damages, transportation delays, recovery expenses, substitute-equipment expenses, additional operational costs, consequential damages, and attorneys' fees where recoverable by law.

89. Upon information and belief, Defendants' conduct toward Plaintiff was not an isolated occurrence but was consistent with a broader pattern and practice of obtaining possession of vehicles, diverting vehicles to facilities owned, operated, or controlled by Defendants, asserting excessive towing, storage, release, administrative, and related charges, refusing adequate billing transparency, and conditioning vehicle release upon payment of disputed charges.

90. Plaintiff brings this action to recover damages caused by Defendants' conduct, obtain appropriate equitable and declaratory relief, recover treble damages and attorneys' fees as authorized by law, and prevent Defendants from continuing the conduct alleged herein.

**OTHER SUBSTANTIALLY SIMILAR INCIDENTS AND PATTERN OF CONDUCT**

90. Plaintiff incorporates by reference each and every preceding allegation of this Complaint as though fully set forth herein.

91. Upon information and belief, Defendants' conduct toward Plaintiff was not an isolated occurrence.

92. Upon information and belief, Defendants have engaged in a recurring pattern and practice of obtaining possession of vehicles, transporting vehicles to facilities owned, operated, or controlled by Defendants, asserting excessive towing, storage, release, administrative, or

related charges, delaying or restricting release of vehicles, refusing adequate billing transparency, and conditioning release of vehicles upon payment of disputed charges.

93. Upon information and belief, numerous vehicle owners and operators have publicly reported experiences substantially similar to Plaintiff's experience with Defendants.

94. Upon information and belief, within approximately three months preceding the filing of this action, an individual identified as Michael Meyers publicly reported that Defendants charged more than Two Thousand Dollars ($2,000.00) for a tow of his passenger vehicle approximately fifteen (15) miles to a dealership collision center and characterized Defendants' conduct as "predatory towing."

95. Upon information and belief, within approximately one year preceding the filing of this action, an individual identified as Chris Ducos publicly reported that Defendants were instructed to transport his vehicle to a destination approximately fifteen (15) miles away but instead transported the vehicle to Defendants' own facility and thereafter charged more than One Thousand Four Hundred Dollars ($1,400.00) before the vehicle could be delivered to the intended destination.

96. Upon information and belief, within approximately two years preceding the filing of this action, an individual identified as Robert Mills publicly reported that Defendants quoted towing charges substantially lower than those ultimately demanded and thereafter charged approximately Two Thousand Dollars ($2,000.00) for towing and storage relating to his passenger vehicle.

97. Upon information and belief, within approximately one year preceding the filing of this action, an individual identified as Josh Baldwin publicly reported that Defendants attempted to charge

approximately One Thousand Seven Hundred Dollars ($1,700.00) for towing his recreational vehicle approximately twenty (20) miles.

98. Upon information and belief, within approximately one year preceding the filing of this action, an individual identified as Doug Stecklein publicly reported that Defendants retained possession of his vehicle for several days, imposed substantial storage charges, and ultimately charged approximately Two Thousand Four Hundred Dollars ($2,400.00) for towing and storage services.

99. Upon information and belief, within approximately one year preceding the filing of this action, an individual identified as Goat Chin publicly reported that Defendants compelled transportation of his vehicle to Defendants' facility, demanded approximately One Thousand Dollars ($1,000.00) to release the vehicle, and subsequently demanded additional sums for further towing services.

100. Upon information and belief, within approximately one year preceding the filing of this action, an individual identified as Hayden Jensen publicly reported that Defendants improperly towed vehicles, required payment in cash, failed to properly report the tow to law enforcement authorities, and caused substantial expense and inconvenience in recovering the vehicle.

101. Upon information and belief, within approximately one year preceding the filing of this action, an individual identified as Mocanu Mihail publicly reported that Defendants quoted one price, later imposed additional undisclosed charges, and ultimately charged substantially more than originally represented.

102. While certain publicly reported incidents involved passenger vehicles or recreational vehicles rather than commercial tractors and trailers, Plaintiff alleges that the common methods described therein—including obtaining possession of vehicles, diverting vehicles from

intended destinations, transporting vehicles to facilities controlled by Defendants, retaining possession of vehicles, imposing excessive towing and storage charges, restricting vehicle release, demanding immediate payment, refusing adequate billing transparency, and leveraging possession of vehicles to obtain payment—are substantially similar to the conduct alleged herein.

103. Upon information and belief, the foregoing incidents are representative rather than exhaustive.

104. Upon information and belief, discovery will reveal additional victims, complaints, towing records, storage records, invoices, communications, payment records, release records, and other evidence demonstrating that Defendants engaged in substantially similar conduct toward other vehicle owners and operators.

105. Upon information and belief, Defendants' conduct toward Plaintiff was consistent with a continuing pattern of activity directed toward vehicle owners and operators who, because of accidents, breakdowns, mechanical failures, or other disabling events, were particularly vulnerable to excessive charges and detention of their vehicles.

106. Upon information and belief, the foregoing incidents demonstrate common methods, common objectives, common participants, and common means by which Defendants obtained possession of vehicles and thereafter extracted or attempted to extract payments substantially exceeding the amounts initially represented or reasonably expected by vehicle owners.

107. Plaintiff expects discovery to reveal the full scope of Defendants' conduct, including additional victims, additional complaints, additional communications, and additional transactions substantially similar to those alleged herein.

**THE ENTERPRISE**

108. Plaintiff incorporates by reference each and every preceding allegation of this Complaint as though fully set forth herein.

109. At all relevant times, Defendants Hookers Towing LLC, Andrew Langer, and John Does 1-10 constituted an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4) (the "Enterprise").

110. The Enterprise existed for the common purpose of conducting towing, recovery, storage, vehicle detention, vehicle release, billing, collection, and related activities.

111. The Enterprise functioned as a continuing unit and operated through relationships among its owners, managers, dispatch personnel, drivers, agents, employees, contractors, representatives, and other persons acting on its behalf.

112. Defendant Andrew Langer exercised ownership, management, direction, and control over the affairs of Hookers Towing LLC and the Enterprise.

113. At all relevant times, Hookers Towing LLC served as the primary vehicle through which the Enterprise conducted its affairs.

114. The Enterprise engaged in and affected interstate commerce through towing, transportation, recovery, storage, billing, collection, and related activities involving commercial and non-commercial motor vehicles.

115. Upon information and belief, members and associates of the Enterprise communicated with one another through interstate telephone calls, text messages, electronic communications, invoices, payment demands, and other interstate wire communications.

116. Upon information and belief, the Enterprise utilized its possession and control of vehicles as a means of obtaining payments from vehicle owners and operators.

117. Upon information and belief, the Enterprise operated with sufficient continuity, structure, personnel, and organization to permit its members and associates to pursue the common purposes described herein.

118. At all relevant times, Defendant Andrew Langer conducted or participated, directly or indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity as more fully alleged herein.

119. The Enterprise was separate and distinct from the individual predicate acts, transactions, and incidents described in this Complaint.

**COUNT I**
**BREACH OF CONTRACT**
**(State Law)**

120. Plaintiff incorporates by reference each and every preceding allegation of this Complaint as though fully set forth herein.

121. On or about May 23, 2026, Plaintiff and Defendant Hookers Towing LLC entered into a valid and enforceable agreement whereby Defendant agreed to tow Plaintiff's disabled commercial tractor from its location near Kansas City, Missouri to Love's Travel Stop and Truck Repair located at 3201 North Ameristar Drive, Kansas City, Missouri 64161.

122. The agreed destination was approximately nine (9) miles from the location of the disabled tractor.

123. Defendant further agreed to perform the requested tow for approximately Seven Hundred Dollars ($700.00).

124. Plaintiff accepted Defendant's offer, authorized the tow, and surrendered possession of the tractor and trailer to Defendant for the limited purpose of transporting the equipment to the agreed destination.

125. Plaintiff fully performed its obligations under the agreement, or alternatively was excused from further performance.

126. Defendant materially breached the agreement by failing and refusing to transport Plaintiff's tractor and trailer to the agreed destination.

127. Instead, Defendant transported Plaintiff's tractor and trailer to Defendant's own facility located at or near 511 James D. Rollo Drive, Grain Valley, Missouri.

128. Defendant further breached the agreement by refusing to deliver Plaintiff's equipment to the agreed destination after obtaining possession of the equipment.

129. Defendant further breached the agreement by demanding charges substantially exceeding the agreed towing price.

130. Defendant further breached the agreement by conditioning release of Plaintiff's equipment upon payment of charges not authorized by the parties' agreement.

131. As a result of Defendant's breaches, Plaintiff suffered damages, including but not limited to loss of use of its commercial equipment, business interruption damages, transportation delays, recovery expenses, substitute-equipment expenses, additional operational costs, consequential damages, and other damages in an amount to be proven at trial.

WHEREFORE, Plaintiff RAKMARK, INC., respectfully requests that this Court enter judgment in its favor and against Defendant HOOKERS TOWING LLC d/b/a HOOKER'S TOWING and award compensatory damages, consequential damages, pre-judgment interest, post-judgment interest, costs of suit, and such other and further relief as this Court deems just and proper.

**COUNT II**
**CONVERSION**
**(State Law)**

132. Plaintiff incorporates by reference each and every preceding allegation of this Complaint as though fully set forth herein.

133. At all relevant times, Plaintiff owned, possessed, controlled, or was otherwise entitled to immediate possession of the commercial tractor and trailer described herein.

134. At all relevant times, the tractor and trailer had a combined value exceeding Seventy-Five Thousand Dollars ($75,000.00).

135. Plaintiff entrusted possession of the tractor and trailer to Defendant Hookers Towing LLC solely for the limited purpose of transporting the equipment to Love's Travel Stop and Truck Repair located at 3201 North Ameristar Drive, Kansas City, Missouri 64161.

136. Defendant obtained possession of Plaintiff's tractor and trailer pursuant to the parties' towing agreement.

137. Defendant thereafter exercised control and dominion over Plaintiff's tractor and trailer.

138. Rather than transporting the tractor and trailer to the destination designated by Plaintiff, Defendant transported the equipment to Defendant's facility located at or near 511 James D. Rollo Drive, Grain Valley, Missouri.

139. Defendant thereafter retained possession and control of Plaintiff's tractor and trailer.

140. Plaintiff demanded release and return of the tractor and trailer and offered to satisfy the agreed towing charge.

141. Defendant refused Plaintiff's demand for possession and instead demanded approximately Twenty-One Thousand Dollars ($21,000.00) as a condition of release.

142. Defendant intentionally failed and refused to surrender possession of the tractor and trailer to Plaintiff.

143. By refusing to surrender possession of Plaintiff's tractor and trailer after demand, Defendant exercised wrongful dominion and control over Plaintiff's property and deprived Plaintiff of its right to possession.

144. Defendant's conduct constituted conversion under Missouri law.

145. As a result of Defendant's conversion, Plaintiff suffered damages including, but not limited to, loss-of-use damages, business interruption damages, transportation delays, substitute-equipment expenses, recovery expenses, consequential damages, and other damages in an amount to be proven at trial.

146. Defendant's conduct was willful, intentional, malicious, and in conscious disregard of Plaintiff's rights, thereby warranting an award of punitive damages to the extent permitted by law.

WHEREFORE, Plaintiff RAKMARK, INC., respectfully requests that this Court enter judgment in its favor and against Defendants, award compensatory damages, punitive damages, pre-judgment interest, post-judgment interest, costs of suit, attorneys' fees where authorized by law, and such other and further relief as this Court deems just and proper.

**COUNT III**
**REPLEVIN**
**(State Law)**

147. Plaintiff incorporates by reference each and every preceding allegation of this Complaint as though fully set forth herein.

148. At all relevant times, Plaintiff owned, possessed, controlled, or was otherwise entitled to immediate possession of the commercial tractor and trailer described herein.

149. At all relevant times, the tractor and trailer had a combined value exceeding Seventy-Five Thousand Dollars ($75,000.00).

150. Defendant obtained possession of Plaintiff's tractor and trailer solely for the limited purpose of transporting the equipment to Love's Travel Stop and Truck Repair located at 3201 North Ameristar Drive, Kansas City, Missouri 64161.

151. Defendant thereafter transported the equipment to Defendant's own facility and retained possession of the tractor and trailer.

152. Plaintiff demanded release and return of the tractor and trailer and offered to satisfy the agreed towing charge.

153. Defendant refused to release the tractor and trailer and instead demanded approximately Twenty-One Thousand Dollars ($21,000.00) as a condition of release.

154. Defendant wrongfully detained Plaintiff's tractor and trailer.

155. Plaintiff is entitled to immediate possession of the tractor and trailer.

156. Defendant has no lawful right to continue withholding possession of the tractor and trailer from Plaintiff.

157. As a result of Defendant's wrongful detention of the tractor and trailer, Plaintiff suffered damages including, but not limited to, loss-of-use damages, business interruption damages, transportation delays, substitute-equipment expenses, recovery expenses, consequential damages, and other damages in an amount to be proven at trial.

WHEREFORE, Plaintiff RAKMARK, INC., respectfully requests that this Court enter judgment in its favor and against Defendants, order immediate possession and return of the tractor and trailer to Plaintiff, award damages for the wrongful detention of the tractor and trailer, award

compensatory damages, pre-judgment interest, post-judgment interest, costs of suit, attorneys' fees where authorized by law, and such other and further relief as this Court deems just and proper.

**COUNT IV**
**FRAUDULENT MISREPRESENTATION**
**(State Law)**

158. Plaintiff incorporates by reference each and every preceding allegation of this Complaint as though fully set forth herein.

159. Prior to obtaining possession of Plaintiff's tractor and trailer, Defendants represented that they would transport Plaintiff's disabled tractor to Love's Travel Stop and Truck Repair located at 3201 North Ameristar Drive, Kansas City, Missouri 64161.

160. Prior to obtaining possession of Plaintiff's tractor and trailer, Defendants further represented that the requested tow would cost approximately Seven Hundred Dollars ($700.00).

161. Defendants made the foregoing representations to induce Plaintiff to entrust possession of its tractor and trailer to Defendants.

162. Plaintiff reasonably relied upon Defendants' representations.

163. In reliance upon Defendants' representations, Plaintiff authorized the tow and surrendered possession of its tractor and trailer to Defendants.

164. Upon information and belief, Defendants intended to divert Plaintiff's equipment from the designated destination after obtaining possession and control of the equipment.

165. After obtaining possession of Plaintiff's tractor and trailer, Defendants represented that Love's Travel Stop and Truck Repair would not accept the vehicle in its condition.

166. Upon information and belief, such representation was false.

167. Upon information and belief, Defendants knew that such representation was false or acted with reckless disregard for its truth or falsity.

168. Upon information and belief, Defendants made such representation for the purpose of inducing Plaintiff to acquiesce in Defendants' transportation of the tractor and trailer to Defendants' own facility.

169. Plaintiff reasonably relied upon Defendants' representations and was deprived of the opportunity to make alternative arrangements for transportation, repair, storage, or recovery of the equipment.

170. After obtaining possession of Plaintiff's tractor and trailer, Defendants demanded approximately Twenty-One Thousand Dollars ($21,000.00) as a condition of release.

171. Defendants' representations concerning the destination, towing services, and charges were false statements of material fact.

172. Plaintiff reasonably relied upon such representations.

173. As a result of Defendants' fraudulent misrepresentations, Plaintiff suffered damages including, but not limited to, loss-of-use damages, business interruption damages, transportation delays, substitute-equipment expenses, recovery expenses, consequential damages, and other damages in an amount to be proven at trial.

174. Defendants' conduct was intentional, willful, malicious, and undertaken with the purpose of obtaining possession and control of Plaintiff's equipment and extracting payment from Plaintiff.

WHEREFORE, Plaintiff RAKMARK, INC., respectfully requests that this Court enter judgment in its favor and against Defendants, award compensatory damages, punitive damages,

pre-judgment interest, post-judgment interest, costs of suit, attorneys' fees where authorized by law, and such other and further relief as this Court deems just and proper.

**COUNT V**
**BREACH OF BAILMENT**
**(State Law)**

175. Plaintiff incorporates by reference each and every preceding allegation of this Complaint as though fully set forth herein.

176. Plaintiff delivered possession of its commercial tractor and trailer to Defendants for the limited purpose of towing and transporting the equipment to Love's Travel Stop and Truck Repair located at 3201 North Ameristar Drive, Kansas City, Missouri 64161.

177. Defendants knowingly accepted possession, custody, and control of Plaintiff's tractor and trailer.

178. A bailment relationship was thereby created.

179. Pursuant to the bailment, Defendants had a duty to exercise reasonable care with respect to Plaintiff's property and to transport, safeguard, and return the property in accordance with Plaintiff's instructions and Defendants' obligations.

180. Defendants breached their duties as bailees by transporting Plaintiff's tractor and trailer to a location other than the destination designated by Plaintiff.

181. Defendants further breached their duties as bailees by retaining possession of Plaintiff's tractor and trailer after Plaintiff demanded return and release of the equipment.

182. Defendants further breached their duties as bailees by conditioning release of Plaintiff's tractor and trailer upon payment of charges substantially exceeding the amount agreed upon by the parties.

183. Defendants failed to return Plaintiff's property upon demand and instead continued to exercise dominion and control over the equipment.

184. As a direct and proximate result of Defendants' breach of bailment duties, Plaintiff suffered damages including, but not limited to, loss-of-use damages, business interruption damages, transportation delays, substitute-equipment expenses, recovery expenses, consequential damages, and other damages in an amount to be proven at trial.

185. Defendants' conduct was willful, intentional, and in conscious disregard of Plaintiff's rights and property interests.

WHEREFORE, Plaintiff RAKMARK, INC., respectfully requests that this Court enter judgment in its favor and against Defendants, award compensatory damages, consequential damages, punitive damages to the extent permitted by law, pre-judgment interest, post-judgment interest, costs of suit, attorneys' fees where authorized by law, and such other and further relief as this Court deems just and proper.

**COUNT VI**
**CIVIL CONSPIRACY**
**(State Law)**

186. Plaintiff incorporates by reference each and every preceding allegation of this Complaint as though fully set forth herein.

187. At all relevant times, Defendants Andrew Langer, Hookers Towing LLC, John Does 1-10, and other persons presently unknown to Plaintiff agreed and combined to accomplish unlawful objectives and lawful objectives through unlawful means.

188. Upon information and belief, the participants in the conspiracy knowingly agreed to obtain possession and control of Plaintiff's tractor and trailer and thereafter utilize such possession

and control to demand and obtain payments substantially exceeding the amount originally agreed upon by the parties.

189. Upon information and belief, the participants in the conspiracy further agreed to divert Plaintiff's tractor and trailer from the destination designated by Plaintiff to a facility owned, operated, or controlled by Defendants.

190. Upon information and belief, the participants in the conspiracy further agreed to retain possession of Plaintiff's tractor and trailer and condition release of the equipment upon payment of charges demanded by Defendants.

191. In furtherance of the conspiracy, Defendants accepted the towing assignment, obtained possession of Plaintiff's tractor and trailer, transported the equipment to Defendants' facility, represented that Love's Travel Stop and Truck Repair would not accept the vehicle, demanded payment substantially exceeding the agreed towing charge, refused to release the equipment upon Plaintiff's demand, and continued to detain the equipment.

192. The acts described herein constituted overt acts taken in furtherance of the conspiracy.

193. Defendants knew or reasonably should have known that the conduct described herein would deprive Plaintiff of possession and use of its commercial transportation equipment and cause substantial economic harm.

194. As a direct and proximate result of the conspiracy and the overt acts undertaken in furtherance thereof, Plaintiff suffered damages including, but not limited to, loss-of-use damages, business interruption damages, transportation delays, substitute-equipment expenses, recovery expenses, consequential damages, and other damages in an amount to be proven at trial.

195. The conduct of Defendants was intentional, willful, malicious, and undertaken with conscious disregard of Plaintiff's rights and property interests.

WHEREFORE, Plaintiff RAKMARK, INC., respectfully requests that this Court enter judgment in its favor and against Defendants, award compensatory damages, consequential damages, punitive damages, pre-judgment interest, post-judgment interest, costs of suit, attorneys' fees where authorized by law, and such other and further relief as this Court deems just and proper.

**COUNT VII**
**VIOLATION OF 18 U.S.C. § 1962(c)**
**(Civil RICO)**

196. Plaintiff incorporates by reference each and every preceding allegation of this Complaint as though fully set forth herein.

197. At all relevant times, Defendants Andrew Langer, Hookers Towing LLC, dispatch personnel, drivers, employees, agents, contractors, representatives, John Does 1-10, and other persons presently unknown to Plaintiff constituted an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4) (the "Enterprise").

198. The Enterprise existed for the common purpose of obtaining possession and control of disabled vehicles, directing or diverting such vehicles to locations controlled by the Enterprise, asserting towing, storage, release, administrative, and related charges, and obtaining payments from vehicle owners and operators.

199. The Enterprise functioned as a continuing unit with an ascertainable structure separate and apart from the individual predicate acts alleged herein.

200. The Enterprise was engaged in and affected interstate commerce through towing, recovery, transportation, storage, billing, collection, and related activities involving commercial and non-commercial motor vehicles.

201. Defendants Andrew Langer and Hookers Towing LLC conducted and participated, directly and indirectly, in the conduct of the affairs of the Enterprise.

202. Beginning on or about May 23, 2026, and continuing thereafter, Defendants knowingly conducted and participated in the affairs of the Enterprise through a pattern of racketeering activity consisting of multiple acts indictable under 18 U.S.C. § 1343 (Wire Fraud).

203. Defendants devised and participated in a scheme and artifice to obtain money and property from vehicle owners and operators through materially false and misleading representations, omissions, and pretenses.

204. On or about May 23, 2026, Defendants transmitted and caused to be transmitted interstate text messages and other electronic communications accepting Plaintiff's instruction to tow the disabled tractor to Love's Travel Stop and Truck Repair located at 3201 North Ameristar Drive, Kansas City, Missouri.

205. Defendants further represented through interstate wire communications that the requested tow would cost approximately Seven Hundred Dollars ($700.00).

206. Plaintiff reasonably relied upon such representations and surrendered possession of its tractor and trailer to Defendants.

207. After obtaining possession of Plaintiff's tractor and trailer, Defendants transmitted and caused to be transmitted additional interstate wire communications representing that Love's Travel Stop and Truck Repair would not accept the vehicle in its condition.

208. Upon information and belief, such representation was false.

209. Upon information and belief, Defendants knew such representation was false or acted with reckless disregard for its truth or falsity.

210. Upon information and belief, Defendants made such representation for the purpose of diverting Plaintiff's equipment to a location controlled by Defendants and obtaining leverage over Plaintiff through continued possession of the equipment.

211. Defendants thereafter transmitted and caused to be transmitted additional interstate wire communications concerning invoices, payment demands, EFS payment demands, release conditions, and related matters.

212. Through such interstate wire communications, Defendants demanded approximately Twenty-One Thousand Dollars ($21,000.00) as a condition of releasing Plaintiff's tractor and trailer.

213. The interstate wire communications described herein were transmitted for the purpose of executing and attempting to execute the fraudulent scheme alleged herein.

214. The foregoing acts of wire fraud were related to one another, involved common participants, common victims, common methods, and common objectives, and were not isolated events.

215. Upon information and belief, Defendants engaged in substantially similar conduct toward other vehicle owners and operators, including those identified elsewhere in this Complaint.

216. Upon information and belief, the conduct alleged herein constituted Defendants' regular way of conducting business and posed a threat of continued racketeering activity.

217. The predicate acts described herein constituted a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961 and 1962.

218. As a direct and proximate result of Defendants' violation of 18 U.S.C. § 1962(c), Plaintiff suffered injury to its business and property, including deprivation of possession of its tractor and trailer, loss-of-use damages, business interruption damages, transportation delays,

substitute-equipment expenses, recovery expenses, consequential damages, and other damages.

219. Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover threefold the damages sustained, together with the costs of suit and reasonable attorneys' fees.

WHEREFORE, Plaintiff RAKMARK, INC., respectfully requests that this Court enter judgment in its favor and against Defendants, award treble damages pursuant to 18 U.S.C. § 1964(c), award attorneys' fees, costs of suit, pre-judgment interest, post-judgment interest, and such other and further relief as this Court deems just and proper.

**COUNT VIII**
**VIOLATION OF 18 U.S.C. § 1962(d)**
**(RICO CONSPIRACY)**

220. Plaintiff incorporates by reference each and every preceding allegation of this Complaint as though fully set forth herein.

221. At all relevant times, Defendants Andrew Langer, Hookers Towing LLC, John Does 1-10, and other persons presently unknown knowingly agreed and conspired to conduct and participate in the affairs of the Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

222. Defendants knowingly agreed that one or more members of the Enterprise would commit multiple acts of racketeering activity, including acts indictable under 18 U.S.C. § 1343 (Wire Fraud).

223. Defendants knowingly agreed to utilize interstate telephone calls, text messages, electronic communications, billing communications, payment communications, EFS payment requests, and other interstate wire communications in furtherance of the Enterprise's objectives.

224. Defendants knowingly agreed to obtain possession and control of vehicles, including Plaintiff's tractor and trailer, and thereafter utilize such possession and control to obtain payments from vehicle owners and operators.

225. Defendants knowingly agreed to further the Enterprise's affairs through materially false and misleading representations concerning towing destinations, towing services, towing charges, storage charges, release conditions, invoices, payment obligations, and related matters.

226. Defendants knowingly agreed to divert vehicles from designated destinations to locations owned, operated, or controlled by members of the Enterprise and thereafter condition release of such vehicles upon payment of charges demanded by the Enterprise.

227. In furtherance of the conspiracy, members of the Enterprise accepted Plaintiff's towing instructions, obtained possession of Plaintiff's tractor and trailer, transported the equipment to Defendants' facility, represented that Love's Travel Stop and Truck Repair would not accept the vehicle, demanded approximately Twenty-One Thousand Dollars ($21,000.00) for release of the equipment, and refused to release the equipment absent payment.

228. Upon information and belief, each Defendant knew the general nature and scope of the Enterprise and knowingly agreed to further its unlawful objectives.

229. Upon information and belief, each Defendant knowingly agreed that one or more members of the Enterprise would commit at least two predicate acts of racketeering activity in furtherance of the Enterprise's objectives.

230. As a direct and proximate result of Defendants' violation of 18 U.S.C. § 1962(d), Plaintiff suffered injury to its business and property, including deprivation of possession of its commercial transportation equipment, loss-of-use damages, business interruption damages,

transportation delays, substitute-equipment expenses, recovery expenses, consequential damages, and other damages in an amount to be proven at trial.

231. Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover threefold the damages sustained, together with the costs of suit and reasonable attorneys' fees.

WHEREFORE, Plaintiff RAKMARK, INC., respectfully requests that this Court enter judgment in its favor and against Defendants, award treble damages pursuant to 18 U.S.C. § 1964(c), award attorneys' fees, costs of suit, pre-judgment interest, post-judgment interest, and such other and further relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff RAKMARK, INC. respectfully requests that this Court enter judgment in its favor and against Defendants HOOKERS TOWING LLC d/b/a HOOKER'S TOWING, ANDREW LANGER, and JOHN DOES 1-10, and award the following relief:

A. Compensatory damages in an amount to be determined at trial;

B. Consequential damages in an amount to be determined at trial;

C. Loss-of-use damages, business interruption damages, transportation-delay damages, substitute-equipment expenses, recovery expenses, and all other damages recoverable by law;

D. Immediate possession and return of Plaintiff's tractor and trailer, to the extent such relief remains applicable, together with damages for wrongful detention thereof;

E. Punitive damages on all counts for which punitive damages are recoverable;

F. Treble damages pursuant to 18 U.S.C. § 1964(c);

G. Reasonable attorneys' fees and costs as authorized by law, including but not limited to 18 U.S.C. § 1964(c);

H. Pre-judgment interest and post-judgment interest as permitted by law;

I. Costs of suit; and

J. Such other and further legal, equitable, or monetary relief as this Court deems just and proper.

This 4th day of June, 2026,

RESPECTFULLY SUBMITTED,

/s/Igor Bozic

______________________________

Igor Bozic, Esq

Attorney Igor Bozic
Attorney for Plaintiff
Rakmark, Inc.
Atty Number: 6315224
777 S Rohlwing Rd
Addison, IL 60101
312-724-7556
igor@nata-law.com

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

This 4th day of June 2026,

RESPECTFULLY SUBMITTED,
/s/Igor Bozic
______________________________
Igor Bozic, Esq

Attorney Igor Bozic
Attorney for Plaintiff
Rakmark, Inc.
Atty Number: 6315224
777 S Rohlwing Rd
Addison, IL 60101
312-724-7556
igor@nata-law.com